IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

GERALD BRITTLE,          )
                         )
      Plaintiff,        )
                         )
v.                   )
                         )   Case No.:  3:16-cv-00908
TIME WARNER, INC., et al.  )
                         )
                         )
      Defendants.     )

_____

WARNER BROS. ENTERTAINMENT  )
INC. and NEW LINE PRODUCTIONS,  )
INC.,                  )
                         )
      Counterclaim Plaintiffs,  )
                         )
v.                   )
                         )
GERALD BRITTLE and GLOBAL  )
ACCESS LLC, a Virginia Limited  )
Liability Company,       )
                         )
                         )
      Counterclaim Defendants.  )

_____

**DEFENDANTS WARNER BROS. ENTERTAINMENT INC.'S AND NEW LINE
PRODUCTIONS, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND AMENDED
<u>COUNTERCLAIMS</u>**

Defendants Warner Bros. Entertainment Inc. and New Line Productions, Inc.

(collectively, "New Line"), by and through their attorneys, answer the Second Amended

Complaint ("SAC") filed by plaintiff Gerald Brittle on May 16, 2017 as follows:

1

## GENERAL DENIAL

Except as otherwise stated herein, New Line denies (i) each and every allegation in the SAC, including without limitation any allegations contained in the headings, subheadings, and footnotes of the SAC; and (ii) any liability to plaintiff.

1.   Deny.

2.   Deny.

3.   Deny.

4.   Deny.

5.   Deny.

6.   New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 and on that basis denies the allegations.

7.   New Line denies the allegations in paragraph 7, except admits that Chad Hayes is an individual residing in Los Angeles, California.  New Line further notes Chad Hayes was dismissed from the case.

8.   New Line denies the allegations in paragraph 8, except admits that Carey Hayes is an individual residing in Los Angeles, California.  New Line further notes Carey Hayes was dismissed from the case.

9.   New Line admits only that Chad and Carey Hayes provided writing services for *The Conjuring* and *The Conjuring 2* and producing services for *Annabelle*, that New Line Productions, Inc. (not Warner Bros. Entertainment Inc.) produced those movies, and that those movies have been displayed in Virginia.  New Line denies Brittle's remaining allegations.

10.   New Line admits only that James Wan is an individual residing in Los Angeles, California (though a citizen of Australia), and that he provided writing, producing, and/or

2

directing services for *The Conjuring*, *The Conjuring 2*, *Annabelle*, *Annabelle: Creation*, *The Nun*, and *The Conjuring 3*.  New Line admits that New Line Productions, Inc. (not Warner Bros. Entertainment Inc.) produced *The Conjuring*, *The Conjuring 2*, *Annabelle*, and *Annabelle: Creation*, and that those movies have been displayed in Virginia.  New Line denies the remaining allegations in paragraph 10.  New Line further notes Wan was dismissed from the case and that the Court found that any claims based on *Annabelle: Creation*, *The Nun*, and *The Conjuring 3* are not actionable.

11.     New Line admits only that Gary Dauberman is an individual residing in Los Angeles, California, and that he provided writing services for *The Conjuring 2*.  New Line admits that New Line Productions, Inc. (not Warner Bros. Entertainment Inc.) produced *The Conjuring 2*, *Annabelle*, and *Annabelle: Creation*, and that those movies have been displayed in Virginia.  New Line denies the remaining allegations contained in paragraph 11.  New Line further notes Dauberman was dismissed from the case.

12.     New Line denies the allegations in paragraph 12, except admits that David Leslie Johnson provided writing services for *The Conjuring 2*, that New Line Productions, Inc. (not Warner Bros. Entertainment Inc.) produced *The Conjuring 2*, and that *The Conjuring 2* has been displayed in Virginia.  New Line further notes Johnson was dismissed from the case.

13.     New Line denies the allegations in paragraph 13, except admits that Warner Bros. Entertainment Inc. is a Delaware corporation with its principal place of business in Los Angeles, California, and is an indirect wholly owned subsidiary of Time Warner Inc.  New Line further notes Time Warner Inc. was dismissed from the case.

14.     New Line denies the allegations in paragraph 14, except admits that New Line Productions, Inc. is a corporation with its principal place of business in Los Angeles.

15.     New Line denies the allegations contained in paragraph 15, except admits that New Line Productions, Inc. (not Warner Bros. Entertainment Inc.) produced *The Conjuring*, *Annabelle*, and *The Conjuring 2*, and that those movies were displayed in Virginia.

16.     New Line admits only that Time Warner Inc. is a Delaware corporation with its corporate headquarters in the State of New York, and that Time Warner Inc. is the ultimate parent company of Warner Bros. Entertainment Inc. and New Line Productions, Inc.  New Line denies the remaining allegations contained in paragraph 16.

17.     Deny.

18.     Deny.

19.     New Line denies the allegations contained in paragraph 19, except admits that Ratpac-Dune Entertainment LLC co-financed *Annabelle* and *The Conjuring 2*, and those movies were displayed in Virginia.  New Line further notes that Ratpac-Dune Entertainment LLC was dismissed from the case.

20.     New Line denies the allegations contained in paragraph 20, except admits that Atomic Monster Incorporated is a California corporation with its principal place of business in Los Angeles.  New Line further notes that Atomic Monster was dismissed from the case.

21.     New Line denies the allegations contained in paragraph 21, except admits that Atomic Monster Incorporated provided producing services for *Annabelle*, *Annabelle: Creation*, and *The Nun*, and received a production company credit for *The Conjuring 2*.

22.     Deny.  New Line further notes that James Wan Productions, Inc. was dismissed from the case.

23.     Deny.

24.     Deny.

25.     Deny.

26.     Deny.

27.     Deny.

28.     New Line admits only that Ed and Lorraine Warren are paranormal investigators, Ed Warren is now deceased, and Lorraine Warren currently resides in Connecticut.  New Line otherwise denies the allegations in paragraph 28.

29.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 and on that basis denies the allegations.

30.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 and on that basis denies the allegations.

31.     Deny.

32.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 and on that basis denies the allegations.

33.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 33 and on that basis denies the allegations.

34.     Deny.

35.     Deny.

36.     Deny.

37.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 37 and on that basis denies the allegations.

38.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 and on that basis denies the allegations.

39.     Deny.

40.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 40 and on that basis denies the allegations.

41.     Deny.

42.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 and on that basis denies the allegations.

43.     Deny.

44.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 and on that basis denies the allegations.

45.     Deny.

46.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 46 and on that basis denies the allegations.

47.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 47 and on that basis denies the allegations.

48.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 48 and on that basis denies the allegations.

49.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 and on that basis denies the allegations.

50.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 50 and on that basis denies the allegations.

51.     New Line admits only that the United States Copyright Office issued Registration No. TX0000628075.  New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 51 and on that basis denies the allegations.

52.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 52 and on that basis denies the allegations.

53.    Deny.

54.    Deny.

55.    Deny.

56.    Deny.

57.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 and on that basis denies the allegations.

58.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 and on that basis denies the allegations.

59.    Admit.

60.    New Line admits only that it is aware of the importance of intellectual property rights.  New Line otherwise denies the remaining allegations in paragraph 60.

61.    New Line admits only that in developing projects, it conducts chain of title searches.  New Line otherwise denies the remaining allegations in paragraph 61.

62.    Deny.

63.    New Line objects to Brittle's misleading paraphrasing, and admits only that James Wan made the excerpted statement, in part: "scariest book I've read" and that Wan provided writing, producing, and/or directing services for *The Conjuring 2* and *Annabelle*.  New Line otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 and on that basis denies the allegations.

64.    Deny.

65.    Deny.

66.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 and on that basis denies the allegations.

67.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 and on that basis denies the allegations.

68.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 and on that basis denies the allegations.

69.    Deny.

70.    Deny.

71.    Admit.

72.    Deny.

73.    Deny.

74.    Deny.

75.    Deny.

76.    Deny.

77.    New Line admits only that it received the letter referenced as Exhibit 19 and that on October 15, 2015, Michael O'Connor, Counsel for New Line, responded to plaintiff's September 21, 2015 letter.  New Line otherwise denies the allegations in paragraph 77.

78.    New Line admits only that it received the letter referenced in this paragraph and *The Nun* is in production.  New Line otherwise denies the allegations in paragraph 78.

79.    Deny.

80.    Deny.

81.    New Line objects to Brittle's misleading paraphrasing, and admits only that Lorraine Warren was reported to have made the excerpted statement, in part: "The things that

went on there were just so incredibly frightening."  New Line otherwise lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 81 and on that basis denies the allegations.

82.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 82 and on that basis denies the allegations.

83.    Admit.

84.     New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 84 and on that basis denies the allegations.

85.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 85 and on that basis denies the allegations.

86.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 86 and on that basis denies the allegations.

87.    New Line objects to Brittle's misleading paraphrasing and denies the allegations in paragraph 87, except admits that Dauberman made the excerpted statement, in part: "I definitely drew from, from the real life, uh, I mean why not, I mean that's, you know, doesn't that it make it all more scary knowing that this stuff really happened.  I think that's why, you know, sort of the based on the Ed and Lorraine Case Files, based on a true story…."

88.    New Line denies paragraph 88 and the allegations in the chart following paragraph 88.  New Line further notes that the Court found that any claims based on *Annabelle: Creation*, *The Nun*, and *The Conjuring 3* are not actionable.

89.    New Line denies the allegations in paragraph 89, except admits that *The Conjuring* was released on July 19, 2013.

90.    New Line denies the allegations in paragraph 90, except admits that James Wan, Chad Hayes, and Carey Hayes provided writing services for *The Conjuring*.

91.    Deny.

92.    New Line admits only that Carey Hayes sent an email on January 30, 2012 with the subject line "James' revised opening and other tweaks."  New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 92 and on that basis denies the allegations.

93.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 93 and on that basis denies the allegations.

94.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 94 and on that basis denies the allegations.

95.    Deny.

96.    New Line admits that Bernice M. Murphy wrote an article in which she wrote in a footnote that "[m]any of the beliefs espoused by the Warren's during the film—as well as, in particular, the 'Annabelle' sequence—appear to come word-for-word from Gerald Daniel Brittle's *The Demonologist: The Extraordinary Career of Ed and Lorraine Warren* (first published in 1980)."  New Line otherwise denies the remaining allegations contained in paragraph 96, as well as the accuracy and admissibility of Ms. Murphy's statement.

97.    Deny.

98.    Deny.

99.    Deny.

100.   Deny.

101.   New Line denies the allegations in paragraph 101, except admits that *The Conjuring 2* was released on June 10, 2016.

102.   Admit.

103.   Deny.

104.   Deny.

105.   New Line denies the allegations in paragraph 105, except admits that "The Enfield Voices" chapter of *The Demonologist* provides:  "Lorraine suddenly jumps up from the couch and strides purposefully to the bedroom door.  She then calls to Ed.  Upon checking, the room reeks of alcohol; and on Lorraine's dresser, an ornamental crucifix set in a grotto is turned upside down!"

106.   New Line denies the allegations in paragraph 106, except admits that there is a demonic nun character in *The Conjuring 2* and that the "Beyond Amityville" chapter of *The Demonologist* provides: "Not far from there is Borley, the most haunted area in England.  Both Lorraine and I have seen the Borley Nun walking along the road, and this time we'll try to photograph her too."

107.   Deny.

108.   Deny.

109.   New Line denies the allegations in paragraph 109, except admits that *Annabelle* was released on October 3, 2014.

110.   Deny.

111.   Deny.

112.   New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 112 and on that basis denies the allegations.

113.    New Line objects to Brittle's misleading paraphrasing, and admits only that Vera Farmiga was reported to have made the excerpted statement, in part: "every detail about the Annabelle doll..."  New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 113 and on that basis denies the allegations.

114.    New Line lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 114 and on that basis denies the allegations.

115.    New Line admits that *The Conjuring*, *Annabelle*, and *The Conjuring 2* were released at the time the SAC was filed and *The Nun* is in production.  New Line denies the remaining allegations contained in paragraph 115.  New Line further notes that the Court found that any claims based on *Annabelle: Creation*, *The Nun*, and *The Conjuring 3* are not actionable.

116.    Deny.

117.    Deny.

<u>**Count I:  Copyright Infringement- The Conjuring**</u>
**(Against All Defendants)**

118.    In response to paragraph 118, New Line repeats and realleges each and every response to paragraphs 1 through 117 as though set forth in full herein.

119.    Deny.

120.    Deny.

121.    Deny.

122.    Deny.

123.    Deny.

124.    Deny.

125.    Deny.

126.    Deny.

127.   Deny.

128.   Deny.

129.   Deny.

130.   Deny.

## Count II:  Copyright Infringement- Annabelle
### (Against All Defendants)

131.   In response to paragraph 131, New Line repeats and realleges each and every response to paragraphs 1 through 130 as though set forth in full herein.

132.   Deny.

133.   Deny.

134.   Deny.

135.   Deny.

136.   Deny.

137.   Deny.

## Count III:  Copyright Infringement- The Conjuring 2
### (All Defendants)

138.   In response to paragraph 138, New Line repeats and realleges each and every response to paragraphs 1 through 137 as though set forth in full herein.

139.   Deny.

140.   Deny.

141.   Deny.

142.   Deny.

143.   Deny.

144.   Deny.

145.   Deny.

### Count IV:  Common Law Trespass to Chattels
**(All the Defendants)**

146.    In response to paragraph 146, New Line repeats and realleges each and every response to paragraphs 1 through 145 as though set forth in full herein.  New Line further notes the Court found Count IV not actionable.

147.    Deny.

148.    Deny.

149.    Deny.

150.    Deny.

151.    Deny.

152.    Deny.

153.    Deny.

154.    Deny.

155.    Deny.

156.    New Line admits only that plaintiff seeks injunctive relief and compensatory and punitive damages.  New Line otherwise denies the allegations contained in paragraph 156.

### Count V:  Statutory Business Conspiracy
**(Against All Defendants)**

157.    In response to paragraph 157, New Line repeats and realleges each and every response to paragraphs 1 through 156 as though set forth in full herein.

158.    Deny.

159.    Deny.

160.    Deny.

161.    Deny.

162.    Deny.

163.   Deny.

164.   New Line lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 164 and on that basis denies the allegations.

165.   Deny.

166.   Deny.

167.   Deny.

168.   Deny.

169.   Deny.

### Count VI:  Conversion
**(All defendants)**

170.   In response to paragraph 170, New Line repeats and realleges each and every response to paragraphs 1 through 169 as though set forth in full herein.  New Line further notes the Court found Count VI not actionable.

171.   Deny.

172.   Deny.

173.   Deny.

174.   Deny.

175.   Deny.

176.   New Line admits only that plaintiff seeks injunctive relief and compensatory and punitive damages.  New Line otherwise denies the allegations contained in paragraph 176.

177.   Deny.

178.   Deny.

**Count VII:  Tortious Interference with Contract**
**(Against Defendants New Line, Warner Bros. Entertainment, James Wan,**
**Chad Hayes, Carey Hayes, Gary Dauberman and certain John Doe Defendants)**

179.   In response to paragraph 179, New Line repeats and realleges each and every response to paragraphs 1 through 178 as though set forth in full herein.

180.   Deny.

181.   Deny.

182.   Deny.

183.   Deny.

184.   Deny.

185.   Deny.

186.   Deny.

**Count VIII:  Injunction**
**(Against All Defendants)**

187.   In response to paragraph 187, New Line repeats and realleges each and every response to paragraphs 1 through 186 as though set forth in full herein.  New Line further notes the Court found Count VIII not actionable with respect to *Annabelle: Creation*, *The Conjuring 3*, and *The Nun*.

188.   Deny.

189.   Deny.

190.   Deny.

191.   Deny.

## Count IX:  Violation of the Lanham Act § 43(a), 15 U.S.C. § 1125

192.   In response to paragraph 192, New Line repeats and realleges each and every response to paragraphs 1 through 191 as though set forth in full herein.  New Line further notes the Court found Count IX not actionable.

193.   Deny.

194.   Deny.

195.   Deny.

196.   Deny.

197.   Deny.

198.   Deny.

199.   Deny.

200.   Deny.

201.   Deny.

202.   Deny.

203.   Deny.

204.   Deny.

205.   Deny.

206.   Deny.

207.   Deny.

208.   Deny.

209.   Deny.

210.   Deny.

211.   Deny.

212.   Deny.

213.   Deny.

214.   Deny.

215.   Deny.

216.   Deny.

217.   Deny.

## PLAINTIFF'S PRAYER FOR RELIEF

1.   New Line denies plaintiff is entitled to the requested relief.

2.   New Line denies plaintiff is entitled to the requested relief.

3.   New Line denies plaintiff is entitled to the requested relief.

4.   New Line denies plaintiff is entitled to the requested relief.

5.   New Line denies plaintiff is entitled to the requested relief.

6.   New Line denies plaintiff is entitled to the requested relief.

7.   New Line denies plaintiff is entitled to the requested relief.

8.   New Line denies plaintiff is entitled to the requested relief.

\*       \*       \*       \*

## AFFIRMATIVE DEFENSES

As additional defenses to the SAC, and without suggesting or conceding that it has the burden of proof on any such defenses, New Line alleges as follows:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

Plaintiff's complaint fails to state a claim upon which relief may be granted.

## SECOND AFFIRMATIVE DEFENSE

### (Barred)

Plaintiff's claims are barred to the extent the Court has already ruled adversely to plaintiff with respect to any of them.

## THIRD AFFIRMATIVE DEFENSE

### (Violation of Cal. Code Civ. P. § 425.16)

Plaintiff's claims are barred in whole or in part by California's anti-SLAPP statute, CAL. CODE CIV. P. § 425.16.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff's claims are barred in whole or in part by the doctrine of unclean hands.

## FIFTH AFFIRMATIVE DEFENSE

### (Laches)

Plaintiff's claims are barred in whole or in part by the doctrine of laches.

## SIXTH AFFIRMATIVE DEFENSE

### (First Amendment)

Plaintiff's claims are barred in whole or in part by the First Amendment.

## SEVENTH AFFIRMATIVE DEFENSE

### (Lack of Damages)

Plaintiff's claims are barred in whole or in part because plaintiff sustained no damages.

## EIGHTH AFFIRMATIVE DEFENSE

### (Lack of Injury)

Plaintiff's claims are barred in whole or in part because plaintiff suffered no injury.

## NINTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Plaintiff's claims are barred in whole or in part because plaintiff failed to mitigate damages.

## TENTH AFFIRMATIVE DEFENSE

### (License)

Plaintiff's claims are barred in whole or in part by an express or implied license.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Waiver)

Plaintiff's claims are barred in whole or in part by the doctrine of waiver.

## TWELFTH AFFIRMATIVE DEFENSE

### (Estoppel)

Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Preemption)

Plaintiff's claims are barred in whole or in part because they are preempted by federal law.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

Plaintiff's claims are barred in whole or in part by the applicable statutes of limitation.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (Lack of Ownership)

Plaintiff's claims are barred in whole or in part because plaintiff does not own the purported rights at issue.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

Plaintiff's claims are barred in whole or in part because plaintiff lacks standing to assert any claims.

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Fair Use)

Plaintiff's claims are barred in whole or in part by the doctrine of fair use.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Consent or Authorization)

Plaintiff's claims are barred in whole or in part on the ground that plaintiff expressly or impliedly consented to and/or authorized New Line's conduct.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, New Line hereby demands a trial by jury for all issues triable to a jury.

## ADDITIONAL DEFENSES

New Line is informed and believes and on such basis alleges that it may have additional defenses available that are not fully known and of which New Line is not presently aware.  New Line reserves the right to raise and assert additional defenses (and possible counterclaims, including malicious prosecution, abuse of process, or a sham lawsuit) when they are ascertained.

WHEREFORE, New Line respectfully requests the Court enter an Order:

a.      Dismissing plaintiff's SAC in its entirety with prejudice;

b.      Entering judgment in New Line's favor;

c.      Awarding New Line its fees and costs incurred since the commencement of this litigation, pursuant to, *inter alia*, California's anti-SLAPP statute, CAL. CODE CIV. P. § 425.16(c) and the Copyright Act, 17 U.S.C. § 505; and

d.      Award such other and further relief as the Court may deem just and proper.

\*      \*      \*      \*

## COUNTERCLAIMS

Counterclaim plaintiffs New Line as and for their counterclaims against Gerald Brittle, allege as follows:

1.      This Court has supplemental jurisdiction over the counterclaims under 28 U.S.C. § 1367(a) because these claims arise out of the subject matter of the original action.

### THE PARTIES

2.      Warner Bros. Entertainment Inc. is a corporation organized under the laws of the State of Delaware with its principal place of business in Los Angeles, California.

3.      New Line Productions, Inc. is a corporation organized under the laws of the State of California with its principal place of business in Los Angeles, California.

4.      Gerald Brittle is an individual residing in Richmond, Virginia.

5.      Global Access LLC is a limited liability company organized under the laws of the State of Virginia with its principal place of business in Richmond, Virginia.  Global Access LLC is a project management firm authorized to administrate all literary properties attributable to the author Gerald Brittle.  Transactions entered into on behalf of Global Access LLC are made valid by the signed approval of Gerald Brittle as Global Access LLC's director.

## NATURE OF THE ACTION

6.     New Line brings these claims to vindicate its lawful right to create motion pictures based on the lives and careers of Ed and Lorraine Warren.  For years, Brittle and his cohort, Tony DeRosa-Grund,[1] have conspired to strip New Line of these rights, constantly changing positions and concocting new theories with complete disregard for the truth.

7.     To begin, prior to this lawsuit, Brittle and DeRosa-Grund both took the position that DeRosa-Grund owned all of the rights required to make motion pictures based on the Warrens' life work and "Case Files."  Brittle also submitted a declaration on DeRosa-Grund's behalf in which he swore under penalty of perjury that the book *The Demonologist* (which he co-authored and is at the center of Brittle's current lawsuit against New Line) was "not related" to *The Conjuring* movie.  Brittle's assertions (and others like them) affirmatively misled New Line, as Brittle now takes the exact opposite positions in this litigation.  Indeed, after a JAMS ruling between New Line and DeRosa-Grund—which held, among other things, that New Line "owns all right, title and interest to the approximately 8000 Case Files"; that "[a]ny rights acquired by DeRosa-Grund with respect to the Demonologist Option are the sole property of New Line;" and that "[a]ny rights acquired by DeRosa-Grund under any agreements with third parties related to the 'Property'… are the sole property of New Line"—Brittle now switches positions and claims that *he* alone owns them and that *The Conjuring* pictures infringe *The Demonologist*.

8.     Brittle and Global Access LLC (hereinafter collectively referred to as "Brittle") and DeRosa-Grund also conspired and entered into a secret side-deal in which Brittle assigned to DeRosa-Grund any asserted *Conjuring*-related motion picture rights.  While New Line was

---

[1] "DeRosa-Grund" is defined herein to refer to Tony DeRosa-Grund and his three related companies, Silverbird Media, LLC, Evergreen Media Group, LLC, and Evergreen Media Holdings, LLC.

entitled to exercise the Demonologist Option as an assignee, Brittle and DeRosa-Grund conspired to withhold the agreement from New Line.

9.     New Line does not, nor did it, need Brittle's rights or permission to make *The Conjuring* movie or other related motion pictures.  No one has the sole right to tell stories about historical and biographical facts, and movies may be made about such individuals, like the Warrens, without giving rise to legal claims, including under the Copyright Act.  Brittle's new allegations are also entirely baseless because New Line also owns all rights to the Warrens' case files and their life rights through a direct deal with Lorraine Warren.  Brittle's theory to the contrary is squarely at odds with his prior admissions and is based on a misreading of the relevant agreements.  Brittle's arguments fail, for yet another reason.  New Line is entitled to the Demonologist Option pursuant to its agreement with DeRosa-Grund.  The Demonologist Option grants New Line, as DeRosa-Grund's assignee, all rights to exploit *The Demonologist* as a movie and to use any of Brittle's underlying material.  Had New Line been given its rightful opportunity to exercise the Demonologist Option, this lawsuit would not exist.  New Line was ready, willing, and able to pay Brittle the $150,000 necessary to exercise the Demonologist Option.  Yet DeRosa-Grund and Brittle conspired to defraud New Line, affirmatively misled New Line, and withheld the Demonologist Option from New Line to try and deprive New Line of its right to exercise the Demonologist Option.

10.     New Line has sued Brittle and DeRosa-Grund in a pending JAMS arbitration in Los Angeles, California.  While New Line maintains that its claims at issue here are subject to arbitration pursuant to its right as an assignee to the Demonologist Option—which is governed by California law and contains a binding JAMS arbitration provision—Brittle has represented that he intends to move to dismiss the JAMS action for lack of jurisdiction.  *See* Dkt. 55.

Moreover, this Court held that choice-of-law questions and Brittle's remaining state-law claims will not be decided until at least summary judgment here.  *See* Dkt. 66.  Given these developments—and the Court's current unwillingness to stay this case pending the JAMS arbitration—New Line must pursue its claims here, too, to protect and reserve all rights.  New Line asserts claims against Brittle for: (1) tortious interference; (2) aiding and abetting fraud; (3) civil conspiracy; and (4) statutory business conspiracy.

## FACTUAL BACKGROUND

### A.     Ed and Lorraine Warren & *The Demonologist* Book

11.     Ed and Lorraine Warren (the "Warrens") were paranormal investigators based in Connecticut, whose life work consisted of investigating hauntings and working with church officials to exorcise demons.  The Warrens documented their life work in "Case Files" they kept, in photographs they took, and in audio recordings they made.

12.     In November 1978, Brittle and the Warrens entered into a publishing agreement with Prentice-Hall granting it "the exclusive right to publish … an unpublished work tentatively entitled THE DEMONOLOGIST."  Dkt. 39-1.  *The Demonologist:  The Extraordinary Career of Ed & Lorraine Warren* ("the Book") was first published in 1980, and it purports to recount the true facts of the Warrens' work on a variety of cases and philosophies as investigators.

### B.     *The Conjuring* Pictures

13.     *The Conjuring*, *The Conjuring 2*, and *Annabelle* are movies developed and produced by New Line Productions, Inc., and are based on the lives and careers of the Warrens.

14.     Some of the Pictures, like *The Conjuring*, find their origin in the Warrens' direct experiences.  Other pictures, like *Annabelle*, focus on new characters and a story line developed entirely by New Line.  *The Conjuring* Pictures have been a commercial success.

### C.     Tony DeRosa-Grund, Brittle, and Their Deceptive Schemes

15.     Tony DeRosa-Grund is a producer from Texas.  DeRosa-Grund has masterminded a series of secret (and often false) side deals—either with his own closely held companies, or with parties like Brittle—in an effort to claim rights in *The Conjuring* Pictures that do not belong to him (regularly taking wildly different factual positions in these side deals).  DeRosa-Grund and Brittle have abandoned or lost all of these lawsuits.[2]  And DeRosa-Grund has vexatiously harassed New Line and has been found repeatedly to have misled the courts.[3]

16.     Brittle, too, has engaged in deceptions of the courts taking wildly contradictory factual and legal positions as it suits his current strategic objectives—all in violation of New

---

[2] *See, e.g.*, *Evergreen Media Holdings, LLC, DeRosa-Grund v. Warner Bros. Entm't Inc., New Line Prods., Inc.*, 4:14-cv-00793 (S.D. Tex. 2014) (dismissed in favor of arbitration) (Brittle's action filed with DeRosa-Grund under 4:14-cv-01117 was consolidated with this DeRosa-Grund lawsuit as a related case); *Evergreen Media Holdings, LLC, DeRosa-Grund, Brittle v. Lorraine Warren, Tony Spera, Graymalkin Media, LLC, New Line Prods., Inc., Warner Bros. Entm't Inc.*, 4:14-cv-01117 (S.D. Tex. 2014) ("*Brittle I*") (voluntarily dismissed without prejudice in consolidated action 4:14-cv-00793); *Evergreen Media Holdings, LLC, DeRosa-Grund, Brittle v. Lorraine Warren, Tony Spera, Graymalkin Media, LLC*, 3:14-cv-01068 (D. Conn. 2014) (voluntarily dismissed without prejudice); *DeRosa-Grund, The DeRosa-Grund Family Trust v. New Line Cinema LLC, Craig A. Alexander*, 4:14-cv-03019 (S.D. Tex. 2014) (filed on the eve of the arbitration hearing and then voluntarily dismissed without prejudice within one week); *DeRosa-Grund v. Time Warner Inc., Warner Bros. Entm't Inc., New Line Prods., Inc., Chad Hayes, Carey Hayes, Peter Safran*, 4:15-cv-02273 (S.D. Tex. 2015) (voluntarily dismissed without prejudice within three weeks); *DeRosa-Grund v. Time Warner Inc., Warner Bros. Entm't Inc., New Line Prods., Inc., Chad Hayes, Carey Hayes*, 4:15-cv-02763 (S.D. Tex. 2015) (dismissed with prejudice).

[3] *See, e.g.*, *In re Tony DeRosa-Grund*, 4:09-bk-33264, Dkt. 122-3 at 7 (Bankr. S.D. Tex.) (Jan. 22, 2016) (rejecting DeRosa-Grund's testimony as "blatantly misleading"); *id.*, Dkt. 122 at 61, 69 (Jan. 22, 2016) ("to an extreme degree, [DeRosa-Grund acted with] a bad faith intention to play fast and loose with the judicial system"; DeRosa-Grund's conduct was "vexatious" and "fraudulent" and his testimony "perjurious"); *id.* at 71 (referring DeRosa-Grund to U.S. Attorney's office for potential criminal prosecution based on his "efforts to game the bankruptcy system"); *id.*, Dkt. 403 at 40 (May 19, 2017) (explaining that DeRosa-Grund "has repeatedly lied under oath and cheated the bankruptcy system"); Dkt. 47-2, Ex. A at 21 (Feb. 5, 2015) ("JAMS Award") (concluding that "DeRosa-Grund's lack of credibility … reinforced the conclusions" made in the Arbitrator's JAMS Award); *id.* at 26 (referring to DeRosa-Grund's conduct as "deplorable").

Line's rights and the Federal Rules. *See, e.g.*, Dkts. 45 at 4-6; 47 at 3-4; 60 at 14-15. Indeed, Brittle's new allegations in this action, in which he seeks $900,000,000 in damages, are squarely at odds with his prior statements and are based on dishonest, fraudulent, and deceptive tactics, and ultimately asserted with no basis in fact or in law. For example:

      a.      Prior to this lawsuit, Brittle submitted a sworn declaration in late 2014 attesting that "'The Demonologist' is not related to 'The Conjuring' theatrical motion picture or the 'Perron Farmhouse' case." Dkt. 47-2, Ex. D ¶ 12. Brittle now asserts that *The Conjuring* infringes on his copyright in the Book and his alleged rights in the Perron Farmhouse case.

      b.      Prior to this lawsuit, Brittle repeatedly attested that Tony DeRosa-Grund owned all of the rights required to make motion pictures based on the Warrens' life work and "Case Files." *Brittle I*, Dkt. 1 ¶ 68 (Brittle asserting that DeRosa-Grund's company acquired the "rights associated with the [Warrens'] Case Files, as well as the [Warrens'] life rights"). Brittle now asserts that *he* owns the Warrens' Case Files, and when confronted with this stunning contradiction, has invented a supposed cut-off date after which DeRosa-Grund obtained a limited set of the Case File rights—even though Brittle had represented the exact opposite to the courts in prior filings. *See, e.g.*, Dkt. 60 at 14-15.

      c.      Prior to this lawsuit, Brittle alleged that New Line acquired "the 'Perron Farmhouse' Case File, the 'Annabelle' Case File, and 'The Enfield Poltergeist' Case File" from DeRosa-Grund. *Brittle I*, Dkt. 1 ¶ 20. Brittle now asserts that New Line has no right in these case files, that he alone owns these case files, and *The Conjuring* Pictures wrongfully used material from the case files.

      d.      Prior to this lawsuit, Brittle represented that "all the information presented in [the Book, *The Demonologist*] is true" and that the Book is about "real cases that happened to

real people." *See* Dkts. 4 at 2; 66 at 6.  Brittle now asserts that his Book is fictional, even though

he submitted a sworn declaration—as recently as three years ago—asserting the opposite.  Dkt.

45-2, Ex. H ¶ 11.

17.    Brittle's deceptions and factual flip-flops continue, like the new, unfounded

assertion—made in recent briefs—that the Demonologist Option only conveyed his "life rights,"

when he swore under oath the opposite in a declaration filed in another case.  Dkt. 61 at 7-8.[4]

18.    While Brittle is the lone named plaintiff in the current case, DeRosa-Grund is

plainly involved in its prosecution, as Brittle's complaints cite, quote, and include scores of

materials from DeRosa-Grund's private JAMS arbitration against New Line.  *E.g.*, Dkt. 1 ¶¶ 60,

402, 547, 690; Dkt. 5 ¶¶ 32, 358, 617, 760-63.[5]

**D.    Initial Involvement with the Warrens and New Line**

19.    New Line became involved with DeRosa-Grund in 2009, after he represented to

New Line that he had a life-story agreement with the Warrens and proposed making a motion

picture based on one of their cases.  *See* JAMS Award at 4.  New Line and DeRosa-Grund

entered into an Option Quitclaim Agreement ("OQA") and a Producer Loanout Agreement

("PLA"), pursuant to which DeRosa-Grund granted New Line all right, title, and interest in, *inter*

*alia*, any rights DeRosa-Grund had in the Warrens' life-story rights and the Warrens' "entire case

---

[4] New Line reserves all rights to seek relief in this case under Rule 11 and the Court's inherent authority for such blatant inconsistencies, as well as to pursue later actions for, *e.g.*, malicious prosecution, abuse of process, or sham litigation.

[5] Though prominently involved in the misconduct, New Line is not naming DeRosa-Grund as a counter-defendant here because he is subject to a pending JAMS arbitration filed in California based on the same conduct.  *See* Dkts. 47, 61; *see also Evergreen Media Holdings, LLC*, 4:14-cv-00793, Dkt. 45, at 22 (finding that the New Line and DeRosa-Grund "Agreements used broad arbitration clauses" and that "his claims must be resolved in arbitration").

file library," which included every paranormal investigation they conducted over their careers as investigators.  SAC Ex. 17.

20.     The OQA also provides, *inter alia*, that New Line is entitled to:  "Any and all rights and interests of every type and nature heretofore or hereafter acquired by [DeRosa-Grund] with respect to the Property and/or pursuant to the Agreements, including without limitation, all motion picture and other rights to the life stories of the Warrens, the life stories of the Perrons and the characters of Ed and Lorraine Warren (collectively, "Other Rights")."  *Id.* ¶ 1(A)(d).

21.     In the first of many difficulties with DeRosa-Grund, in August 2010 Lorraine Warren's attorney wrote to New Line, claiming that her signature was forged on the underlying rights agreements on which DeRosa-Grund relied.  To remove any cloud on its title, New Line made an agreement directly with Lorraine Warren, pursuant to which she granted New Line all of her life rights and all "case files" from the Warrens' case file library.  *See* SAC Ex. 18.

### E.     The First JAMS Arbitration with DeRosa-Grund

22.     DeRosa-Grund proved a deeply problematic and unreliable business associate, and problems with DeRosa-Grund only worsened, as he continually breached his agreements with New Line and interfered with its rights by, *e.g.*: filing trademark applications for "The Conjuring" and seeking to use them to block New Line from using the name for the title of its movie; surreptitiously entering into a television deal with a competing studio (Lionsgate) for a *The Conjuring* television show in violation of the OQA and its Amendment; disclosing confidential release plans and audience testing scores to a competitor; improperly registering ten film sequel titles for "The Conjuring" with the Motion Pictures Association of America; and refusing to indemnify New Line for the Texas lawsuits which had been filed in breach of the covenant not to sue and other litigation.  *See* JAMS Award at 13-16, 24-25.

23.     On June 5, 2013, New Line filed a JAMS arbitration demand against DeRosa-Grund.  After nearly three years of hard-fought litigation, the Hon. Terry Friedman issued a Partial Award on January 20, 2015, eleven days *before* the Demonologist Option expired on January 31, 2015.  *See* Dkt. 45-2, Ex. F at 5.  In his ruling, Judge Friedman held that New Line owned all rights under the Demonologist Option, and he ordered DeRosa-Grund to produce a copy of the Demonologist Option to New Line, an order which DeRosa-Grund failed to honor.  *Id.*  Judge Friedman issued a final, detailed order on February 5, 2015, affirming his rulings.  *See* JAMS Award.  He ruled, in relevant part, that:

a.     "New Line owns all right, title and interest to the approximately 8,000 Case Files and other materials referenced in Paragraph 1A of the Quitclaim," *id.* at 32;

b.     "DeRosa-Grund has no right, title or interest to and must cease and desist from using the title 'The Conjuring,'" *id.* at 31;

c.     "Any rights acquired by DeRosa-Grund under any agreements with third parties related to the 'Property' . . . are the sole property of New Line under the Agreements and DeRosa-Grund is required to produce to New Line any agreement for such rights," *id.*; and most relevant here,

d.     "Any rights acquired by DeRosa-Grund with respect to the Demonologist Option [an agreement his company EMH had made with Brittle] are the sole property of New Line under the Agreements and DeRosa-Grund is required to produce to New Line any agreement for any such rights with respect to the Demonologist Option," *id.*

24.     Judge Friedman further found that DeRosa-Grund had made a variety of malicious threats.  Judge Friedman rejected all of DeRosa-Grund's counterclaims.

### F.   DeRosa-Grund's Secret Side Deal with Brittle

25.    During the first arbitration, New Line learned about a secret side deal—the above-mentioned "Demonologist Option"—as a result of one of the many lawsuits filed by DeRosa-Grund and Brittle against New Line in Texas in early 2014.  *Brittle I*, Dkt. 1.  However, the specific terms of the Demonologist Option were withheld, and at the time, Brittle affirmatively represented that DeRosa-Grund, and subsequently, New Line, owned the Warrens' case files. Brittle continued such representations, even submitting a sworn declaration that *The Conjuring* movie was not related to the Book.  *See* Dkt. 47-2, Ex. D ¶ 12.  Such representations affirmatively misled New Line.

26.    Not until August 2015, seven months after the Demonologist Option purportedly expired, did New Line finally obtain a copy and the exact terms therein.  In it, Brittle's company, Global Access LLC, purports to grant DeRosa-Grund's company, EMH, the "exclusive right" "to produce, distribute, exhibit, license and otherwise exploit, in any and all media" "motion pictures[,] television productions and other audiovisual works of all kinds, including without limitation sequels and remakes, based on the book, The Demonologist."  Dkt. 47-2, Ex. B ¶ 3(a). The Demonologist Option purports to grant DeRosa-Grund the right to use "any available materials (including, but not limited to, notes, documents, interviews, etc[.]) in connection with the book written by Brittle entitled 'The Demonologist' as well as all exclusive ancillary rights in the Works."  *Id.*  The Purchase Price to exercise the Demonologist Option for a theatrical film based on Brittle's book rights is $150,000—or 0.017% the value of the damages figure that Brittle now seeks against New Line.  *Id.* ¶ 2.  The Demonologist Option allegedly expired on January 31, 2015.

G.      **New Line Was Entitled to the Demonologist Option as an Assignee**

27.      While New Line did not need Brittle's rights or permission to make *The Conjuring* movie or other related motion pictures, to avoid wasteful litigation of this sort, New Line had the right to exercise the Demonologist Option pursuant to its rights under the OQA. *See* SAC Ex. 17 ¶ 1A(d); JAMS Award at 31 ("Any rights acquired by DeRosa-Grund with respect to the Demonologist Option are the sole property of New Line").  Pursuant to the OQA, New Line was entitled to the Demonologist Option as DeRosa-Grund's assignee.  In the OQA, DeRosa-Grund granted New Line, among other rights:  "Any and all rights and interests of every type and nature heretofore or hereafter acquired by Company with respect to the Property and/or pursuant to the Agreements, including without limitation, all motion picture and other rights to the life stories of the Warrens, the life stories of the Perrons and the characters of Ed and Lorraine Warren (collectively, 'Other Rights')."  SAC Ex. 17 ¶ 1A(d).  Pursuant to this paragraph of the OQA and the extensive testimony given in the first JAMS arbitration, Judge Friedman held that, "Any rights acquired by DeRosa-Grund with respect to the Demonologist Option are the sole property of New Line under the Agreements and DeRosa-Grund is required to produce to New Line any agreement for any such rights with respect to the Demonologist Option."  JAMS Award at 31.

28.      DeRosa-Grund did not inform New Line of the Demonologist Option, despite his duty to do so.  Indeed, DeRosa-Grund hid his secret side-deal with Brittle from New Line, even though New Line demanded it from him in discovery, Dkt. 47-2, Ex. C, Req. for Prod. at Req. No. 4 (Nov. 19, 2013) (requesting any "agreements between [DeRosa-Grund] and any PERSON referring or relating to THE CONJURING and/or the lives and/or the case files of [the] Warren[s]"), and despite being ordered to produce a copy to New Line, *see* JAMS Award at 31

("DeRosa-Grund is required to produce to New Line any agreement for such rights.").  To this day, DeRosa-Grund has failed to produce to New Line a copy of the Demonologist Option

### H.   Brittle's Tortious Interference, Aiding and Abetting Fraud, and Conspiracy

29.    Brittle aided and abetted DeRosa-Grund's fraud against New Line in withholding the Demonologist Option, conspired with DeRosa-Grund to withhold the Demonologist Option from New Line, and tortiously interfered with New Line's OQA with DeRosa-Grund.

30.    Since at least 2014—well before the Demonologist Option allegedly expired—Brittle has had full knowledge of the OQA and PLA, New Line's rights in conjunction therewith, and DeRosa-Grund's obligation to transfer any and all rights related to the Warrens to New Line. Indeed, in one of many lawsuits filed by Brittle and DeRosa-Grund against New Line in April 2014, Brittle explicitly references the OQA.  Brittle alleged that "[o]n or around March 29, 2010, Evergreen and [New Line] entered into an Option Quitclaim Agreement, with a date of November 11, 2009."  *Brittle I*, Dkt. 1 ¶ 20.  Brittle further asserted that, "[p]ursuant to the OQA, New Line acquired an option to purchase theatrical motion picture rights to an agreed upon, and very limited, selection of the Case Files . . . includ[ing] the 'Perron Farmhouse' Case File, the 'Annabelle' Case File, and 'The Enfield Poltergeist' Case File, which were reserved exclusively by New Line solely for the purposes of theatrical motion picture exploitation."  *Id.*  Brittle's last assertion is, again, directly at odds with his current lawsuit, in which he alleges that he (and not New Line) owns the Perron Farmhouse, Annabelle, and Enfield Poltergeist case files and that New Line wrongfully used each of these case files in making *The Conjuring*, *The Conjuring 2*, and *Annabelle*.

31.    Brittle also actively assisted DeRosa-Grund in the first arbitration between New Line and DeRosa-Grund surrounding the OQA, New Line's rights to the Warrens' case files, and

33

the Demonologist Option.  Brittle submitted sworn testimony in support of DeRosa-Grund, and made the affirmative choice to discuss the Demonologist Option in his declaration, Dkt. 45-2, Ex. H ¶ 36, but chose not to provide a copy of the agreement to New Line or the Arbitrator, at a time when New Line could still exercise the option.

32.     Given Brittle's knowledge of the OQA, Brittle knew, that pursuant to the OQA, DeRosa-Grund granted new Line all his rights to the Warrens' life-story rights and the Warrens' "entire case file library," which included every paranormal investigation they conducted over their careers as investigators.  Moreover, Brittle knew that, pursuant to the OQA, New Line was entitled to any and all rights heretofore and hereafter obtained by DeRosa-Grund related to the life stories of the Warrens, Ed and Lorraine Warren, and the Warrens' case files.  Brittle knew that his transfer of rights to DeRosa-Grund under the Demonologist Option belonged to New Line, not DeRosa-Grund.

33.     Moreover, given Brittle's close relationship with DeRosa-Grund and his participation in the first arbitration, Brittle not only had full knowledge of the OQA, Brittle knew that Judge Friedman held that New Line was entitled to any and all rights that DeRosa-Grund had acquired in the Demonologist Option pursuant to the OQA and ordered that the Demonologist Option be produced.

34.     Despite Brittle's knowledge and Judge Freidman's ordering DeRosa-Grund to produce the Demonologist Option, Brittle and DeRosa-Grund conspired and agreed to withhold the Demonologist Option.  Brittle also intentionally interfered with New Line's rights under the OQA and aided and abetted DeRosa-Grund's fraud against New Line.  Brittle did so for the purpose of frustrating New Line's production of *The Conjuring* Pictures, its relationship with the

Warrens, its contractual rights under the OQA, and its contractual relationship with DeRosa-Grund.

35.     Had DeRosa-Grund and Brittle not agreed and conspired to fraudulently conceal the Demonologist Option from New Line and made affirmative misrepresentations, New Line would have exercised its rights, paying Brittle $150,000 to secure all of his purported rights in a theatrical film, thereby avoiding costly future disputes of the sort that continue today.

36.     While DeRosa-Grund and Brittle eventually disclosed the existence of the Demonologist Option between them in a jointly filed lawsuit against New Line, *see Brittle I*, DeRosa-Grund and Brittle still failed to provide New Line with an actual copy of the Demonologist Option.

37.     As a result of DeRosa-Grund's and Brittle's conspiracy to defraud and tortious interference, New Line has been injured in the form of substantial litigation fees and expenses to defend this lawsuit and other baseless litigations.

## COUNTERCLAIM I

### (TORTIOUS INTERFERENCE WITH CONTRACT)

38.     New Line incorporates by reference the allegations contained in paragraphs 1 through 36, as though set forth fully herein.

39.     New Line has valid and existing contract rights pursuant to the OQA through which DeRosa-Grund granted New Line all right, title, and interest in, *inter alia*, any rights DeRosa-Grund had in the Warrens' life-story rights and the Warrens' "entire case file library," which included every paranormal investigation they conducted over their careers.[6]

---

[6] To be clear, New Line separately and directly owns the Warrens' life rights and case files pursuant to an agreement with Lorraine Warren.  In the Life Story Option Purchase Agreement, Lorraine Warren granted New Line, among other things, the case files "from the Warrens'

35

40.     Pursuant to the OQA, New Line is entitled to any and all of DeRosa-Grund's rights heretofore and hereafter related, among others, to the life stories of the Warrens, the characters of Ed and Lorraine Warren, and the Warrens' case files.

41.     Brittle has and had actual knowledge of New Line's valid and existing contract rights, at all times relevant to this litigation.

42.     Despite having actual knowledge of New Line's exclusive rights to the Warrens' life-story rights and the Warrens' "entire case file library," Brittle entered into the Demonologist Option with DeRosa-Grund, conspired with DeRosa-Grund to withhold such option from New Line, and wrongfully sought to interfere with New Line and DeRosa-Grund's contractual relationship.

43.     Brittle committed intentional acts designed to induce DeRosa-Grund to breach the OQA.

44.     As a result of Brittle's tortious interference, DeRosa-Grund materially breached the OQA.

45.     Brittle conducted its interference with fraud, malice, and oppression and in a willful and conscious disregard of New Line's rights under its OQA.

46.     As a direct and proximate result of Brittle's interference, New Line has been damaged in a sum according to proof at the time of trial, including New Line's attorneys' fees and costs of suit, and any and all other relief the Court deems appropriate.

---

paranormal investigations case file library"; "[a]ny and all right, title and interest in and to the entire life stories of the Warrens ('Life Story Rights'), including without limitation, all events, occurrences, experiences, stories, episodes, incidents, transactions and affairs related thereto or therefore occurring, including without limitation, all paranormal investigations and paranormal experiences"; and "[a]ny and all rights and interests of every type and nature heretofore or hereofafter acquired by Owner with respect to the Property."  Dkt. 39-18 at 2.

## COUNTERCLAIM II

## (AIDING AND ABETTING FRAUD)

47.     New Line incorporates by reference the allegations contained in paragraphs 1 through 45, as though set forth fully herein.

48.     DeRosa-Grund fraudulently withheld the Demonologist Option by failing to disclose it pursuant to his duty under the OQA, failing to produce it in response to a discovery request, failing to comply with the JAMS arbitration order, and failing to produce it to this day.

49.     Had DeRosa-Grund not fraudulently concealed the Demonologist Option from New Line, New Line would have exercised its rights, paying Brittle $150,000 to secure all of his purported rights in a theatrical film, thereby avoiding costly future disputes of the sort that continue today.

50.     Through the OQA, Brittle knew that DeRosa-Grund was obligated to transfer any rights in the Demonologist Option to New Line.  And through Brittle's close relationship and history with DeRosa-Grund, Brittle knew that DeRosa-Grund intentionally and fraudulently withheld the Demonologist Option from New Line.

51.     Brittle substantially assisted DeRosa-Grund in withholding the Demonologist Option.  Despite Brittle's active involvement in the original JAMS arbitration, Brittle never timely informed New Line of the Demonologist Option.  Brittle has still not provided New Line with an actual copy of the Demonologist Option, aside from attaching it to a declaration in a separate, now closed, lawsuit—in a filing made *after* the option allegedly expired.

52.     As a direct and proximate result of Brittle's aiding and abetting fraud, New Line has been damaged in a sum according to proof at the time of trial, including New Line's attorneys' fees and costs of suit, and any and all other relief the Court deems appropriate.

## COUNTERCLAIM III

## (CIVIL CONSPIRACY)

53.     New Line incorporates by reference the allegations contained in paragraphs 1 through 51, as though set forth fully herein.

54.     Brittle and DeRosa-Grund agreed to conceal the Demonologist Option from New Line at the time it was entered in January 2012, and thereafter, for the purpose of frustrating New Line's production of *The Conjuring* Pictures and its relationship with the Warrens.

55.     Brittle had full knowledge that the Demonologist Option was assigned to New Line and that DeRosa-Grund was obligated to produce it to New Line.

56.     Though DeRosa-Grund recruited Brittle to file a declaration on DeRosa-Grund's behalf in DeRosa-Grund's losing JAMS arbitration, together they conspicuously withheld the actual document which would have allowed New Line full, uncontested rights to make the movies—and to avoid the cloud Brittle seeks to now place over New Line's rights.  This combined, associated, agreed, to, mutually undertaken and concerted scheme allowed DeRosa-Grund and Brittle to keep avenues open by which they could continue to harass New Line.  *Cf.*, *e.g.*, Dkt. 45-2, Ex. F, *In re Tony DeRosa-Grund*, 4:09-bk-33264, Dkt. 403 at 1, 41 (Bankr. S.D. Tex.) (noting how DeRosa-Grund and his "surrogates" "foment" "frivolous" claims of this sort).

57.     By failing to give New Line the opportunity to rightfully exercise its rights to Brittle's Book for $150,000, DeRosa-Grund and Brittle conspired to fraudulently deprive New Line of its lawful rights.  In furtherance of the conspiracy, Brittle and DeRosa-Grund failed to disclose the Demonologist Option in the JAMS arbitration and failed to produce it pursuant to Judge Friedman's orders.  As a result, DeRosa-Grund engaged in fraud, and Brittle aided and abetted that fraud.

58.     Had DeRosa-Grund and Brittle not conspired to fraudulently conceal the Demonologist Option from New Line, New Line would have exercised its rights, paying Brittle $150,000 to secure all of his purported rights in a theatrical film, thereby avoiding costly future disputes of the sort that continue today.

59.     As a direct and proximate result of Brittle's conspiracy, New Line has been damaged in a sum according to proof at the time of trial, including New Line's attorneys' fees and costs of suit, and any and all other relief the Court deems appropriate.

## COUNTERCLAIM IV

## (STATUTORY BUSINESS CONSPIRACY)

60.     New Line incorporates by reference the allegations contained in paragraphs 1 through 58, as though set forth fully herein.

61.     Brittle and DeRosa-Grund agreed to conceal the Demonologist Option from New Line at the time it was entered in January 2012, and thereafter, for the purpose of frustrating New Line's production of *The Conjuring* Pictures and its relationship with the Warrens.

62.     Brittle had full knowledge that the Demonologist Option was assigned to New Line and that DeRosa-Grund was obligated to produce it to New Line.

63.     Though DeRosa-Grund recruited Brittle to file a declaration on DeRosa-Grund's behalf in DeRosa-Grund's losing JAMS arbitration, together they conspicuously withheld the actual document which would have allowed New Line full, uncontested rights to make the movies—and to avoid the cloud Brittle seeks to now place over New Line's rights.  This combined, associated, agreed, to, mutually undertaken and concerted scheme allowed DeRosa-Grund and Brittle to keep avenues open by which they could continue to harass New Line.

64.     By failing to give New Line the opportunity to rightfully exercise its rights to Brittle's Book for $150,000, DeRosa-Grund and Brittle conspired to fraudulently interfere with New Line's exploitation of its lawful rights.  In furtherance of the conspiracy, Brittle and DeRosa-Grund failed to disclose the Demonologist Option in the JAMS arbitration and failed to produce it pursuant to Judge Friedman's orders.  As a result, DeRosa-Grund engaged in fraud, and Brittle aided and abetted that fraud.

65.     Brittle and DeRosa-Grund conspired to harm New Line's reputation, trade, profession, and business in the motion picture industry.  Had DeRosa-Grund and Brittle not conspired to fraudulently conceal the Demonologist Option from New Line, New Line would have exercised its rights, paying Brittle $150,000 to secure all of his purported rights in a theatrical film, thereby avoiding costly future disputes of the sort that continue today.

66.     Brittle's conduct was willful, malicious and intentional.  New Line is entitled to recover three times the amount of its actual damages, punitive damages in an amount to be determined at trial, as well as its reasonable attorneys' fees and costs incurred in bringing this action pursuant to VA. CODE § 18.2-500, and any other relief the court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, New Line hereby demands a trial by jury for all issues triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, New Line requests that this Court:

a.      Award New Line damages on its counterclaims against Brittle and Global

        Access LLC, jointly and severally, and its costs and expenses of this action,

        including reasonable attorneys' fees as permitted by law;

b.      Award New Line punitive damages pursuant to VA. CODE § 18.2-500, and as

        otherwise permitted by law; and

c.      Grant such other and further relief to New Line as the Court deems just and

        proper under the circumstances, including, as appropriate, injunctive or

        declaratory relief.


Dated:  September 12, 2017                    Respectfully submitted,

                                             By: /s/ J. Benjamin Rottenborn

                                             Matthew T. Kline, Esq. (*pro hac vice*)
                                             Lauren Rakow, Esq. (*pro hac vice*)
                                             O'MELVENY & MYERS LLP
                                             1999 Avenue of the Stars, 8th Floor
                                             Los Angeles, California 90067
                                             Telephone: 310-246-6840
                                             Fax: 310-246-6779
                                             mkline@omm.com
                                             lrakow@omm.com

                                             Laura Lorenz, Esq. (*pro hac vice*)
                                             O'MELVENY & MYERS LLP
                                             1625 Eye Street, NW
                                             Washington, D.C. 20006-4001
                                             Telephone: 202-383-5300
                                             Fax: 202-383-5414
                                             llorenz@omm.com

J. Benjamin Rottenborn (VSB #84796)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1400
10 S. Jefferson Street
Roanoke, Virginia 24011
Telephone: 540-983-7600
Fax: 540-983-7711
brottenborn@woodsrogers.com

*Attorneys for Defendants and Counterclaim
Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this 12th day of September, 2017, a copy of the foregoing was served via

ECF to all counsel of record.

<u>*/s/ J. Benjamin Rottenborn*</u>
J. Benjamin Rottenborn (VSB #84796)
WOODS ROGERS PLC
Wells Fargo Tower, Suite 1400
10 S. Jefferson Street
Roanoke, Virginia 24011
Telephone: 540-983-7600
Fax: 540-983-7711
brottenborn@woodsrogers.com
