UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| GERALD BRITTLE,<br><br>    Plaintiff,<br><br>v.<br><br>TIME WARNER, INC., et al.<br><br>    Defendants. | Case No.: 3:16-cv-00908 |
| WARNER BROS. ENTERTAINMENT INC. and NEW LINE PRODUCTIONS, INC.,<br><br>    Counterclaim Plaintiffs,<br><br>v.<br><br>GERALD BRITTLE and GLOBAL ACCESS LLC,<br><br>    Counterclaim Defendants. | |

## STIPULATED FINAL JUDGMENT

The parties stipulate the following facts and legal conclusions:

This case involves the ownership in and copyrights relating to the stories and case files of paranormal investigators Ed and Lorraine Warren. Plaintiff Gerald Brittle has alleged, *inter alia*, that defendants' movies, *The Conjuring*, *Annabelle*, and *The Conjuring 2*, infringe the copyright in his book, *The Demonologist*, as well as his alleged exclusive right in the Warrens' "case files" and "related materials." After a series of related court orders in favor of defendants, the parties reached a settlement agreement, pursuant to which they now ask the Court to enter this Judgment

so that it is treated as final for collateral estoppel and res judicata purposes. *See, e.g., Ariz. v. Cal.*, 530 U.S. 392, 395-96 (2000) ("settlements ordinarily occasion no issue preclusion … unless it is clear … that the parties intend their agreement to have such an effect"); *In re Capital One Derivative S'holder Litig.*, 2012 WL 6725613, at *5 (E.D. Va. Dec. 21, 2012) (same).

I. **BACKGROUND**

1. Plaintiff Gerald Brittle ("Brittle") is an author of a book called *The Demonologist: The Extraordinary Career of Ed and Lorraine Warren* (the "Book"), first published in 1980. The Book highlights the philosophies and a few paranormal investigations of well-known investigators Ed and Lorraine Warren (the "Warrens"). The Book was marketed for decades as a "true" account of the Warrens' work and interactions with their subjects. *E.g.*, Dkt. 45-2, Ex. K.

2. Defendants New Line Productions, Inc. and Warner Bros. Entertainment Inc. ("New Line") develop, produce, and distribute motion pictures. In 2009, New Line entered into an Option Quitclaim Agreement ("OQA") with Tony DeRosa-Grund and his companies, Evergreen Media Holdings, LLC, Evergreen Media Group, LLC, and Silverbird Media Group, LLC, to acquire all of their right, title, and interest in, among other things, the Warrens' life stories and case files. Dkt. 39-17. The OQA provides, *inter alia*, that New Line is entitled to: "[a]ny and all rights and interests of every type and nature heretofore or hereafter acquired by [DeRosa-Grund] with respect to the Property … including without limitation, all motion picture and other rights to the life stories of the Warrens" and "[t]he entire case file library (approximately 8,000 case files) related to the Warrens' paranormal investigations." *Id.* ¶ 1(A)(a)(iii), (d).[1] New Line

---

[1] In 2013, New Line filed a JAMS arbitration against DeRosa-Grund. Dkt. 47 at 2. While the matter was pending, New Line discovered that DeRosa-Grund entered into a Film/Television & Life Story Rights and Exclusive Consulting Agreement with Brittle and his company, Global Access, LLC, (the "Demonologist Option"), in which Brittle granted DeRosa-Grund's company an option to exploit the Book. *Id.* at 4. Judge Friedman (of JAMS) issued a final order in 2015,

2

also entered into a direct agreement with Lorraine Warren to acquire all rights in the Warrens' life stories and the Warrens' entire case file library. Dkt. 39-18.

3. In 2013, New Line released *The Conjuring*—a movie based on the Warrens' life stories and paranormal investigations. New Line released two more movies in *The Conjuring* universe, *Annabelle* and *The Conjuring 2*, in 2014 and 2016, respectively.

4. On November 11, 2016, Brittle filed the above-captioned lawsuit against Time Warner Inc., Warner Bros. Entertainment Inc., New Line Productions, Inc., RatPac-Dune Entertainment LLC, James Wan, James Wan Productions, Inc., Atomic Monster Incorporated, Chad Hayes, Carey Hayes, David Leslie Johnson, and Gary Dauberman.[2] In his operative complaint, Brittle alleged three claims for copyright infringement, asserting that *The Conjuring*, *Annabelle*, and *The Conjuring 2* infringed the Book. Dkt. 39 ¶¶ 118-45. Brittle also alleged violations of the Lanham Act based on New Line's marketing, and state-law claims for trespass, conversion, conspiracy, and tortious interference based on Brittle's alleged contractual rights to the Warrens' case files and related materials. *Id.* ¶¶ 146-86, 192-217. Brittle sought to enjoin New Line from releasing three new movies: *Annabelle: Creation*, *The Conjuring 3*, and *The Nun* (together with *The Conjuring*, *The Conjuring 2*, and *Annabelle*, the "*Conjuring* Pictures"). *Id.* ¶¶ 187-91.

5. On August 28, 2017, the Court dismissed Brittle's claims against New Line for trespass and conversion (because they were preempted) and for violation of the Lanham Act (on the merits), denied Brittle's request for injunctive relief, and dismissed all claims related to *Annabelle: Creation*, *The Conjuring 3*, and *The Nun*. Dkt. 66 at 1-2, n.3, n.6. The Court allowed

---

ruling, in relevant part, that the Warrens' case files and any rights DeRosa-Grund acquired under the Demonologist Option were the sole property of New Line. *See* Dkt. 45-2, Ex. I at 31-32.

[2] Brittle voluntarily dismissed Time Warner and James Wan Productions. Dkts. 42, 43. This Court dismissed the remaining defendants, except New Line and Warner, for lack of personal jurisdiction on August 28, 2017. Dkt. 66.

certain of Brittle's copyright and state-law claims to proceed, but raised concerns about the viability of those claims. *E.g.*, Dkt. 91 at 80-81; Dkt. 78-2, Ex. A at 23-24, 44.

6. New Line propounded discovery on Brittle aimed at, *inter alia*, exposing how DeRosa-Grund and his cohorts were helping control this case. *E.g.*, Dkt. 45 at 4-5, 19-20; Dkt. 60 at 14-15; Dkt. 68 Cntr. Clm. ¶¶ 16-17. Upon receiving Brittle's responses, New Line filed two motions to compel. *See* Dkts. 78, 80, 82, 87. On November 21, 2017, the Court heard New Line's motions and found that the common-interest privilege did not apply between Brittle and DeRosa-Grund—thus providing New Line with access to many withheld communications. The Court again raised concerns about the viability of Brittle's claims and required Brittle to supplement his responses to many of New Line's Requests for Admission. Decl. of Matthew Kline ("KD") (filed herewith) Ex. A at 19, 33-37, 80-81.

7. Following the Court's discovery rulings, Brittle began producing responsive documents. The documents, among other things, demonstrate that DeRosa-Grund actively participated in this lawsuit, retained Brittle's counsel, drafted and edited pleadings and correspondence, responded to discovery sent to Brittle, and guaranteed Brittle's financial obligations to his attorneys. *See* Dkt. 104 at 4-5, n.2.

8. Soon after the Court's November 21 hearing, Brittle and his counsel asked New Line to discuss resolving the case. On December 2, 2017, New Line and the Brittle Parties entered into a confidential settlement (the "Settlement Agreement"), under which the Brittle Parties agreed, *inter alia*, to dismiss all claims against New Line with prejudice. Dkt. 120 (filed under seal). As part of the Settlement Agreement, Brittle also assigned various rights to New Line, including all right, title, and interest in the Book and the book *The Devil in Connecticut* (which detailed

4

another of the Warrens' cases). *See* KD Ex. F (on file with the U.S. Copyright Office).[3]

## II. BRITTLE'S CLAIMS ARE HEREBY DISMISSED WITH PREJUDICE.

9. Brittle's five remaining claims, *see* Dkt. 66, are for copyright infringement related to *The Conjuring* (Count I), copyright infringement related to *Annabelle* (Count II), copyright infringement related to *The Conjuring 2* (Count III), statutory business conspiracy (Count V), and tortious interference (Count VII). By agreement, Brittle's claims must be dismissed because they are precluded by the binding Settlement Agreement, and in any event, fail on the merits.

### A. Brittle's Claims Are Barred by the Parties' Settlement Agreement.

10. As part of the Settlement Agreement, Brittle conceded that his claims have no merit because the *Conjuring* Pictures do not infringe his Book and that New Line is not liable under Brittle's remaining state law claims. Dkt. 120 (filed under seal) ("Mr. Brittle and his company and agents will concede that, based on further review of the record in the case, the Warner and New Line Entities are not liable for any of the federal or state law claims that he asserted in the Virginia action with respect to [the *Conjuring* Pictures], and they will concede that statements that New Line or others stole Mr. Brittle's property or damaged him in any way are in error."); *id.* ("Mr. Brittle and his company Global Access LLC are dismissing their claims in this case with prejudice, and will be submitting a Proposed Order to the Court … to do so.").

11. The Court has the "inherent authority … to enforce settlement agreements," *Hensley v. Alcon Laboratories, Inc.*, 277 F.3d 535, 540 (4th Cir. 2002), and enforces the Settlement Agreement here, dismissing all of Brittle's claims against all defendants with prejudice as Brittle

---

[3] By agreement, the December 2, 2017, Settlement Agreement was adapted into a Long Form Settlement Agreement and Release (the "Long Form Settlement Agreement"). The parties have presented both the Settlement Agreement and the Long Form Settlement Agreement to the Court (under seal), and this Stipulated [Proposed] Final Judgment (which they filed publicly) is Exhibit C to that Long Form Settlement Agreement.

agreed, *see In re A.H. Robins Co., Inc.*, 173 F.3d 423, 1999 WL 55394, at *1 (4th Cir. 1999) (the "law strongly favors settlement of litigation" as does "compelling public interest and policy").

### B. Brittle's Five Remaining Claims Also Fail on the Merits.

12. A plaintiff suing for copyright infringement "must establish ownership of [a] valid copyright" and "copying" by defendant. *Darden v. Peters*, 488 F.3d 277, 285 (4th Cir. 2007); *Towler v. Sayles*, 76 F.3d 579, 581 (4th Cir. 1996). To show actionable copying, "[n]o one may claim originality as to facts[,]" whether "historical, biographical, [or] news of the day," *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347-48 (1991); *Narell v. Freeman*, 872 F.2d 907, 911 (9th Cir. 1989) (copyright "in historical accounts is narrow"), and a party is "estopped from claiming [his story was] fictional" where he "represented his books to be factual accounts," *Nash v. CBS, Inc.*, 691 F. Supp. 140, 142 (N.D. Ill. 1988), *aff'd*, 899 F.2d 1537 (7th Cir. 1990).

13. <u>Counts I and II.</u> Brittle's copyright infringement claims against *The Conjuring* (Count I) and *Annabelle* (Count II) relate to only the first six minutes of *The Conjuring* and the first 62 seconds of *Annabelle*. Dkt. 56 at 14-15. As Brittle now admits, neither of these short sequences (and neither movie generally) infringes the Book. Dkt. 45 at 8-9, 13-14; 60 at 10-11; 120.

14. Brittle alleged that the opening scenes from *The Conjuring* and *Annabelle* infringe Chapter III of the Book, titled "Annabelle." Dkt. 39 ¶¶ 95, 110-11. There are three main reasons these claims fail. *First*, Brittle admitted in a sworn declaration in other litigation that *The Conjuring* movie is "not related" to his Book. Dkt. 45-2, Ex. H ¶ 12.

15. *Second*, the alleged points of overlap mentioned in Brittle's complaint are unprotected historical facts. The real-life Annabelle investigation—which concerned a "Raggedy Ann" doll owned by two nurses—was widely reported for decades, *e.g.*, Dkt. 45-2, Ex. R; Dkt. 45-3, Exs. Z-AA, LL, and the factual details Brittle included in the Book—which Brittle admitted "would

6

have been ... from [Ed Warren's] own recording" of his interview of the nurses, Dkt. 104-3, Ex. W—are unprotected, historic fact. Dkt. 45 at 8-14; *Feist*, 499 U.S. at 347.[4]

16. *Third*, the Annabelle sequences are presented in starkly different manners in the movies and Book. *E.g.*, Dkt. 45 at 10-14; Dkt. 60 at 3-7. The doll in the movies is reimagined and looks nothing like Raggedy Ann, *e.g.*, Dkt. 45 at 10; moreover, while the Book has a straightforward interview of the nurses and a long story about one of their boyfriends, Dkt. 45-2, Ex. K at 51-56, the movies create a dramatic series of flashbacks, set to spine-chilling music, depicting scenes that appear nowhere in the Book (*e.g.*, the doll destroying a room; the doll being thrown in a dumpster), *see, e.g.*, Dkt. 45-2, Ex. L at 00:00:25-03:51; Ex. O at 00:00:54-01:56; 00:02:26; Dkt. 45 at 8-14; Dkt. 60 at 3-7; KD Ex. B (Brittle: "In [*The Conjuring*], the Annabelle sequence *was a pure contrivance and had nothing to do with the case I wrote about in the book*.") (italics added).

17. Count III. Brittle also targeted *The Conjuring 2*, which he alleged infringed "The Enfield Voices" chapter in the Book. Dkt. 39 ¶¶ 101-08. This claim suffers from similar defects. To begin, both the movie and the Book depict one of the most well-documented paranormal incidents in history about the hauntings of the Hodgson family in Enfield, England. Dkt. 45 at 15-16; Dkt. 45-1 ¶ 40; Dkt. 45-3, Ex. KK. Moreover, as Brittle himself admitted, the "Enfield Voices" chapter "is an exact verbatim transcript of the event, taken off a tape recording made by Ed Warren at the time," Dkt. 104-3, Ex., X, so any overlap was not protectable, and indeed

---

[4] Indeed, Brittle represented to the public that the events in the Book were true. *E.g.*, Dkt. 45 at 2-3; Dkt. 45-2, Ex. K at ix-x (Brittle's preface in Book: "[A]ll the information presented in this book is true.... These are real cases that happened to real people."); KD Exs. C (Brittle: "All the stories in the Demonologist are true."); D (Brittle: "I wrote what was given to me as true.... [I] did not include any material that could not be substantiated by either hard evidence or ... an independent party or witness"); E (Brittle website: "It can therefore be said with complete authority that every sentence in this book is true."); Dkt. 104-3, Ex. Y at 4 (Brittle's prior lawyer: "Gerald has no copyright claim in any materials he received from the Warrens. He cannot state a claim for copyright infringement"); *id.* Ex. Z at 2 (Brittle cannot claim copyright in "supposed activities that occurred at the various hauntings"; copyright does not "exist in direct quotes").

7

Brittle could identify no points of overlap in the two works other than basic "scenes-a-faire," and he could not show any actionable substantial similarity in the two works, *e.g.*, Dkt. 45 at 14-18.

18. <u>Counts V and VII</u>. Brittle's state-law claims hinge on his alleged ownership of the Warrens' "case files," under asserted contractual agreements with the Warrens. Dkt. 39 ¶¶ 39, 43, 54. These claims fail on the merits as well. *First*, and for example, Brittle told a federal court in Connecticut that DeRosa-Grund—*and not Brittle*—owned the Warrens' "Case Files" and related materials. Dkt. 45 at 19-20; Dkt. 60 at 14-15. While Brittle suggested in this case that his prior contradictory admissions were mistaken, discovery here revealed that Brittle affirmed these statements were "factually accurate" and "utterly true." Dkt. 114-1, Exs. R, AA.

19. *Second*, none of Brittle's agreements with the Warrens grants him any ownership rights in their "case files" or other materials. Rather, they grant him permission to use the Warrens' "vocal recollections" in writing the Book, and no more. Dkt. 39-2 ¶ 11. This permission to use this material is not a copyright or ownership grant. *See, e.g.*, Dkt. 45 at 21-23; Dkt. 60 at 11-13.

20. *Third*, Brittle's state-law claims are preempted. *See U.S. ex rel. Berge v. Bd. of Trs. of the Univ. of Ala.*, 104 F.3d 1453, 1463 (4th Cir. 1997). His conspiracy and interference claims pivot on New Line's asserted wrongful "use" of the "Warrens' Case files" in making and distributing "The Conjuring franchise of films." Dkt. 39 ¶¶ 149-53, 158, 162, 172-75, 182-84.

21. In sum, as Brittle has conceded, his claims in this case are without merit and must be dismissed. The *Conjuring* Pictures do not infringe the Book.[5]

---

[5] New Line could have sought sanctions in this case, given the contradictory representations Brittle made to the Court, *e.g.*, Dkt. 45 at 19-20; Dkt. 60 at 14-15, and his admitted withholding of evidence, *e.g.*, Dkt 105-3, Ex. SS ¶¶ 3-5; KD Ex. G (Brittle requesting that DeRosa-Grund "answer then delete" an email soon before the Nov. 2017 hearing). As part of the Settlement Agreement, however, in exchange for the consideration that Brittle provided, New Line agreed not to pursue sanctions against Brittle, among other consideration.

## III. NEW LINE'S COUNTERCLAIMS ARE DISMISSED WITH PREJUDICE.

22.   New Line filed counterclaims against Brittle and Global Access, LLC ("Brittle") for: (1) tortious interference with contract; (2) aiding and abetting fraud; (3) civil conspiracy; and (4) statutory business conspiracy. These claims arise out of Brittle's and DeRosa-Grund's acts of creating and hiding secret agreements between them, and then using those secret deals (even if they are legally infirm) to interfere with New Line's rights. *E.g.*, Dkt. 68 Cntr. Clm. ¶¶ 15-36.

23.   Pursuant to the Settlement Agreement, New Line agreed to dismiss its counterclaims with prejudice as against Brittle and Global Access. As has been confirmed in discovery, DeRosa-Grund seeks to create "poison pill" agreements with parties like Brittle that he can use to try to frustrate New Line's ability to make *Conjuring*-related movies. KD Exs. H (discussing "poison pill" provision in the 2015 Demonologist Option designed to "exclude[] assignment to Warner Bros. [o]r [N]ew [L]ine"); I (similar).

24.   Brittle and DeRosa-Grund made such agreements between themselves in 2012 and 2015 (and also made similar secret agreements with Faust and Frank Checho) and actively hid these agreements from New Line, Judge Friedman, and this Court. *E.g.*, Dkt. 104 at 11-13. While these agreements are invalid, and parties like the Chechos fairly immediately abandoned any claimed right in them once Brittle and New Line challenged the agreements, *e.g.*, Dkt. 123-1; Dkt. 105-1, Ex. FF, such secret dealings forced New Line to spend significant resources protecting its interests.

25.   New Line has agreed not to pursue these and other damages from Brittle (including attorneys' fees or reputational damage) as part of the consideration in the Settlement Agreement.

### ORDER OF DISMISSAL

Based on the parties' stipulations, it is hereby ORDERED as follows:

1.      All of the parties' claims in this case are hereby dismissed with prejudice, pursuant to the Settlement Agreement and this Final Judgment. The *Conjuring Pictures* do not infringe the Book, and New Line now owns the Book in any event.

2.      Pursuant to the Settlement Agreement, each party shall bear its own attorneys' fees and costs, and New Line is releasing Brittle as specific in the Settlement Agreement.

3.      Nothing in this Final Judgment shall prevent New Line from pursuing its rights and remedies against the third-parties that have involved themselves in this litigation or otherwise interfered with its rights.

**IT IS SO ORDERED, ADJUDGED AND DECREED:**

DATED: March ___2___, 2018

/s/
John A. Gibney, Jr.
United States District Judge
Hon. John A. Gibney, Jr.
United States District Judge for the Eastern District of Virginia